Here first from Mr. Michael Pagiovanni. Good morning, Your Honors. May it please the Court, Michael Pagiovanni for River Oaks Management. River Oaks appeals two judgments in favor of Bridgefield Casualty Insurance Company declaring that Bridgefield did not waive a coverage exclusion under a workers' compensation policy for work outside of Louisiana, even though Bridgefield was provided with documentation of River Oaks Mississippi operations three months before the accident in question and accepted premiums based on that Mississippi payroll before the accident and after the accident and throughout 2012. This is actually the second time this case is before this Court. Judge Dennis was on the first opinion, the first panel that rendered an opinion or rendered a decision in this case. This Court, in a previous per curiam opinion, reversing summary judgment for Bridgefield, held that under Louisiana law, the acceptance of premium payments by Bridgefield after receiving knowledge of facts creating a power of waiver of avoidance of coverage for a particular reason, that that constituted a waiver of such power or privilege. This Court further held that subjective knowledge was not the requirement, that any notice of facts which would cause a reasonable person to inquire further imposed a duty of investigation on Bridgefield and that any failure to investigate would constitute a waiver of all powers or privileges a reasonable search would have uncovered. This Court went on to state that if Bridgefield accepted premium payments in 2012 with notice that those payments included Mississippi payroll of River Oaks, from which it could have determined that River Oaks was operating in Mississippi and after that accepted premium payments based on Mississippi payroll, then River Oaks waived the notice provision about the operations in Mississippi and its right to deny coverage. This Court also made clear that the notice issue was not whether River Oaks satisfied a notice requirement under the terms of the policy, which in fact the policy just says provide notice and doesn't say how, but this Court went on to state that the issue of whether the documents were sufficient to place Bridgefield on notice that River Oaks was operating in Mississippi, resulting in a waiver of River Oaks, Bridgefield's right to deny coverage, was distinct from the issue of notice under policy requirements. The case was remanded to the trial court, and at trial on the remand, Bridgefield steadfastly maintained that because its auditor, Lynette Greco, claimed she didn't read the sections of a Form 940 and a W-2 form that specifically listed Mississippi payroll and Mississippi operations, that Bridgefield was not on notice of the Mississippi operations or that River Oaks had Mississippi employees. And Bridgefield further claimed they weren't even on notice of facts that would cause a reasonable person to investigate further as to whether Mississippi operations were engaged in. If this was the right standard, then the remand by this Court with specific instructions on subjective knowledge was vain and useless because if all Bridgefield's auditor had to say was, I didn't see that part of those forms, then there's no way we could ever prove that notice was provided. And furthermore, this Court did not state that we had to prove that Bridgefield actually read the notice that was provided to them in that audit. This Court said that we had to simply prove that we provided adequate notice to Bridgefield of Mississippi operations to put them on notice of a duty to investigate further. The district court in this case specifically found that the documents that River Oaks produced at the audit, the Form 940 and the W-2 form, the same documents that are verified in the contemporaneous audit report prepared by River Oaks' auditor, contain references to the Mississippi employees of River Oaks. The 3-page 940 form that was submitted at the audit, the first line of it identifies River Oaks as a multi-state employer. There are two lines below that that have specific information on payroll and non-taxables that are included in Ms. Greco's audit report. And then the attachment to that specifically lists the states where River Oaks is doing work as Mississippi and Louisiana. The information on the two-page W-2 summary forms that River Oaks submitted at that audit listed Louisiana payroll and Mississippi payroll separately. And in order to reach a total payroll, those two figures had to be added together to come up with a total payroll for River Oaks. The information in the Form 940 and the W-2 summary regarding River Oaks' Mississippi operations is chargeable to Bridgefield if her auditor had a duty to inquire as to where River Oaks was operating. And clearly the testimony showed she had such a duty. Ms. Greco testified under oath that she was there to establish the correct payroll and to classify employees under correct codes. And on cross-examination, she admitted that in prior audits she had specifically inquired as to whether River Oaks had employees who were working out-of-state. Ms. Greco also admitted that if she had attained information on different locations where River Oaks was operating during the course of that audit, she would report that to Bridgefield and Bridgefield would conduct the appropriate investigation. The audit report for March 2012 by Ms. Greco specifically states that she verified locations where River Oaks was operating. Ms. Greco admitted under oath that in prior audits she had actually asked about whether River Oaks operated in other states, but she didn't ask about it in this particular audit. Under examination by the court itself, Ms. Greco admitted that her duties at the audit, including verifying whether the insured, where the insured was operating. The record evidence plainly established that Ms. Greco, part of her duty, was to inquire as to locations where River Oaks was operating during that audit. Now, much of Bridgefield's brief is spent explaining inconsistencies in the testimony of Ms. Greco, who was the only witness, with respect to prior factual assertions and pleadings that had been filed by Bridgefield in this matter. This court has made clear that factual assertions and pleadings and briefs are binding on parties and that this court can hold the parties to those factual assertions at a later date. In the pretrial dispositive motions filed by Bridgefield in this very case, including the pretrial motions that led to the first appeal, Bridgefield specifically averred that the only documents reviewed by Ms. Greco during her audit were the Form 940, the W-2s, and the W-3. Those are six pages of documents total. Bridgefield further averred in those prior pleadings that Ms. Greco reviewed no other documents. On those six pages of documents that Bridgefield pled were reviewed by Ms. Greco, there were three references to the Mississippi operations of River Oaks on those six pages of documents. The audit report that Ms. Greco did in 2012 specifically references verification of three classes of documents, W-2s, W-3s, and the Form 940 submitted by River Oaks. There are no references in Ms. Greco's audit report to her review of any other documents connected with the payroll of River Oaks in determining what the payroll was for those audit reports. Nevertheless, despite those prior statements and pleadings at the trial of this matter, Ms. Greco couldn't remember what documents she reviewed to conduct the audit. She said she didn't recall specifically seeing the 940 form. She said she didn't remember what documents were presented to her at the audit. But then she immediately went on to say, but when I look at my audit report, I see the W-3 is listed as being reviewed, so I know that was reviewed because I wouldn't have put it in my audit report if it wasn't reviewed. Ms. Greco wouldn't make the same statement with respect to the 940 form and the W-2 that were also listed in the audit report because she knew full well that both of those forms specifically disclosed these Mississippi operations. On cross-examination, Ms. Greco admitted she routinely requested the Form 940 for audits. She admitted she had previously said she might have obtained information from the Form 940 for her audit report. She admitted that the Form 940 was the only form that actually showed a specific figure for nine taxables that were included in her audit report and added together to find a total payroll. On cross-examination, Ms. Greco admitted she routinely requested W-2 summaries for the annual audits. She claimed she couldn't recall if she reviewed the River Oaks W-2 summary that listed Mississippi and Louisiana as payroll. When she was referred to her audit report in a reference to W-2 summaries, she said that meant individual W-2s, not the summaries. The testimony showed that no individual W-2s were ever produced in connection with these audits. The only document produced was a W-2 summary, and that W-2 summary is a page-and-a-half document that specifically lists the Mississippi payroll of River Oaks. The trial court suggested that Ms. Greco should not be charged with knowledge of information in hundreds of pages of documents produced at the audit, and River Oaks has never suggested that they should be. But we have suggested that Bridgefield is charged with the knowledge of the information in the W-2 forms, in the Form 940 that the audit report says was verified, and that the prior pleadings by Bridgefield said were the only documents that Ms. Greco reviewed in connection with this audit. Those two forms specifically disclosed the Mississippi operations. Ms. Greco says, I didn't read that part of the forms. I can't ‑‑ River Oaks couldn't make Ms. Greco read the whole form, but River Oaks could submit a form that disclosed the Mississippi operations, and that's what they did. It's no different than if River Oaks had submitted a letter that said, I'm now operating in Mississippi. If all Bridgefield has to say is, well, I didn't read the letter, then I could never put them on notice of anything. We put them on notice with the forms that specifically listed the Mississippi operations, and that's irrefutable based on this record. Bridgefield contends that the cases we cite do not support a finding of waiver, merely if an insurer could or even should have known of facts that should trigger an investigation. This Court, on the first review in Bridgefield 1, said that subjective knowledge is not required. Notice of facts that would cause a reasonable person to inquire further imposes a duty to investigate. Failure to do so constitutes a waiver. That's what happened here. We gave them two documents that their report says they reviewed that said we were operating in Mississippi, and they didn't investigate any further. They said, well, we didn't read it. Well, we can't make them read it, Your Honors. All we can do is provide notice in accordance with what this Court previously directed. The Bridgefield also ignores the Matthews decision that was decided by this Court, and it's important for two reasons. Matthews distinguished estoppel from waiver as affirmative defenses, and it held that Home Insurance Company was on notice of a potential issue on coverage for Matthews when he attached claim forms on a renewal application and thereafter accepted premiums, even though the claims in question had arisen before the original policy was issued and Matthews hasn't disclosed it on the original policy. Matthews was cited by this Court in the prior appeal that resulted in the reversal of the summary judgment as the law on waiver by an insurance company by acceptance of premiums after knowledge of information that would give them a right to investigate further and perhaps deny coverage. The other point about the Matthews case is this. This Court distinguished between estoppel and waiver and said they were two separate concepts under Louisiana law and even got into an inquiry as to whether raising estoppel was the same as reserving a defense on waiver. In this case, Bridgefield cited the Court to Badger-Scofield, a case out of Wisconsin, and told the Court that it is evidence that this is consistent waiver law of other States which should be followed. The problem is that Badger-Scofield was not a waiver case. It was an estoppel case. It specifically states it was an estoppel case. This Court distinguishes estoppel from waiver, and this Court has previously acknowledged that the issue in this case is waiver, not estoppel. So we submit to the Court that the Badger-Scofield case cited by counsel for Bridgefield was not applicable in this matter for those reasons, unless the Court has any questions. One further point. On the original appeal, this Court stated that one of the issues was whether premiums based on Mississippi payroll were accepted after the audit and prior to the accident. Cross motions for summary judgments were filed. The trial court specifically found that Bridgefield conceded that they had accepted premiums after the audit, before the accident, and after the accident based on Mississippi payroll. So that issue that this first panel of this Court addressed was resolved in favor of River Oaks. We respectfully submit that this second issue should be also. Thank you, Your Honors. Thank you, sir. Mr. Miles. Good morning, Your Honor. May it please the Court. Stephen Miles on behalf of Bridgefield Insurance Company. We're here today on appeal from a bench trial, a trial that was conducted before the district judge. There really are, I think, two issues in this appeal. One is whether the insurer must have knowledge of a fact to trigger a duty to investigate before there can be a waiver. And then the second issue is whether here the district court during the bench trial found correctly that there was no knowledge. And that issue, that second issue, is reviewed under a clear error standard. And that second finding can only be reversed if there was no evidence to support the finding of the district court. I think, Your Honor, Bridgefield believes that the judgments of the district court should be affirmed for three reasons.  First, all the Louisiana cases, all of them, require knowledge by the insurer before there can be a waiver. The reason for this is a good one. The insurer is being stripped of a contractual right. There is no doubt here that River Oaks did not give notice of its Mississippi operations. There is no doubt here that Bridgefield had the right to deny coverage for the Mississippi operations. To be stripped of that right requires knowledge under Louisiana law. In the Matthews case that was cited by River Oaks, in that case, the Fifth Circuit, a prior panel, specifically says we must now inquire whether the insurer had knowledge when it accepted premiums. There is no doubt that knowledge is required there. All of the cases require knowledge. You don't have to have knowledge of every single fact that would be uncovered during an investigation, but you have to have knowledge of something. The prior panel, Judge Dennis, you were on the prior panel. They did not say anything to the contrary. River Oaks, I believe, takes a quote out of context when they mention that subjective knowledge is not required. In fact, that quote begs the question, subjective knowledge of what? Subjective knowledge of the full panoply of facts that one might uncover is not required, but subjective knowledge of some fact that triggers a duty to investigate is required. But if there's only six pages and three or four of them reference either multi-state work or Mississippi, how can you say you didn't see that? I mean, his point is I can have this page in front of me that has your names on it and say I never saw the name Mr. Miles on it, and you can't prove differently. But if I said I looked at this page, I mean, there's not that many names on it. There's four names, one of them is Miles. So that's the problem. I can always say I didn't see it, and you can go, well, there were only four names there. How could you miss it? I think there's two points in response to that, Your Honor. First of all, it wasn't just four pages. The district court concluded that there were 150 pages. In fact, I think there was an exhibit with 187 pages. This audit was one of 600 that Ms. Greco, the auditor, did per year. She had a checklist mentality when she went through this audit. Six hundred audits per year. They lasted about 30 minutes each. When she goes, she testified that she goes specifically to particular lines on particular pages with her checklist mentality to find the total payroll that she needs. That's what she does. She does not take any of these documents with her. So, Your Honor, I think it's not just a few pages. I think River Oaks wants you to believe it's just a few pages, but the district court in a trial of this matter saw the pages and listened to Ms. Greco's testimony and judged her credibility and determined that she did not see these documents, these lines on these documents that had the specific references to Mississippi, and she judged that to be credible. And on a clear error standard of review, the only way that can be reversed is if there's no evidence of that. I think the Fifth Circuit law is strong on when a district court makes credibility determinations. That's one point, Your Honor. The second point I would say is every time there's a bench trial, there's a credibility determination. I think River Oaks made the point, well, how could we ever show knowledge? You can show knowledge by circumstantial evidence all the time. If you think about the Matthews case, the Matthews case, you had an application for renewal of a policy. You had 16 settlement disputes, they were called, attached to that. The insurer, there wasn't a smoking gun with the insurer saying, yes, I reviewed these. But what there was was the insurer denying the renewal of the policy based upon those 16 disputes disclosed. So you know there's knowledge based on the denial. Every case under Louisiana law, there is knowledge. But their argument is that she said in an affidavit, I relied on the 940, and the 940 checks the box for multi-state. I relied on the W-2 summary. The W-2 summary is two pages long, and Mississippi is on the second page. So that's what, at least that's what I understood his argument to be. On the point of the affidavit, Your Honor, I think he's overstating what the affidavit says. It doesn't say I only reviewed these documents. It doesn't say that. That's point one. Point two is we're here on the review of a bench trial. This affidavit was never introduced into evidence at the bench trial. There's an argument that there's a judicial admission. That wasn't even raised before the district court and wasn't even raised to the reply brief before Your Honors. There was, if it had been raised, there would be discretion by the district court as to whether they could accept that as a judicial admission. There was, at the trial, there was cross-examination about Ms. Greco's deposition testimony about the 940. And she said in her deposition testimony, I did not necessarily review the 940, which was consistent with what she said at the trial. The district court judge heard that, listened to her, looked her in the eye, and believed that to be credible. Even if, Your Honor, she had reviewed the 940, she also testified that if I had reviewed this, I would look specifically at three things, the federal tax ID number, I would look at the employer name, and I'd grab a payroll number off of that. That's what she said she would look at. She said she would not look at the Schedule A. She did not remember reviewing that at trial, but she also said, I don't think I did because I think I reviewed the W-3, which does not have anything about payroll, excuse me, about Mississippi operations in it. Again, Your Honors, this is the review of a bench trial where the district court looked at this evidence, looked at all the exhibits, all 150-something pages of them, and listened to the witness and made a determination there. So back to the Louisiana law issue, I think some of the cases, I think, are very illustrative, including the two Fifth Circuit cases. Matthews, I mentioned, already discussed that one. Also, Debus Financial, that's another Fifth Circuit case that Judge Wiener, you were on the panel of. In that case, there was no dispute that the insurer had received and knew about information concerning allegations about the seaworthiness of a vessel. That was undisputed. The parties argued in that case. The insurer argued, well, I needed to know the full facts. I needed to know the actual facts. And the panel said, no, you don't. You need to know of the allegations, and you admitted you knew the allegations. Those are the two Fifth Circuit cases. They require the knowledge. And, again, the reason they require the knowledge is because a contractual right is being stripped. If we think about this case, too, if the actual knowledge is not required, if the actual knowledge is not required, any kind of insurance audit can subject the insurer to the stripping of a contractual right. Loss control audits, premium audits, you name it. If the insurer could have seen something at that audit, that could waive a contractual right. And I think that's a very dangerous, slippery slope for us to go down, and I think it's also not supported by Louisiana law here. With respect to the factual arguments, I think River Oak said that the insurer, premium auditor, testified that she verified where insured's operations were. I would invite you to look at the testimony at the trial. She said she had a checklist where there were a list of locations, and she went down and said, Are you still operating at this location? That's what she did. She didn't verify all the locations in the universe. River Oak also argued that there was an admission about the 940. I think that's not the case. I think there's not an admission. There was not necessarily a review of the 940. She said that. She instead reviewed payroll records. That's what she testified she did. She reviewed the payroll records, and she reviewed the W-3 form. She testified that's how she got it, this non-taxable number that River Oak's focus is on, that they say is only available on the Form 940. She testified she got that from deducting the payroll number from the number on the W-3, and the result was a non-taxable. That's the testimony that was before the trial court. That's the testimony that the trial court credited, and the trial court was right to credit it because Ms. Greco, with 600 audits a year, shouldn't be charged with the knowledge of everything that's on every piece of paper there. That's an unfair result for Ms. Greco, who has a certificate from a community college and has a checklist mentality, and that's what she does on her job. There was also contention that Ms. Greco verified that the 940 was there. I would invite the court to look at the trial transcript. That is not an accurate characterization of what Ms. Greco said. She said that she had an audit report and the 940 was there in the room. She didn't say that the word verified on her audit checklist did not mean that she reviewed it. She testified to that, and the district court judge obviously credited that testimony on a clear error standard when there is, at a minimum, one view of the evidence, which is the district court judge's, and then River Oaks has their view. On a clear error standard, that cannot be reversed. Another point about the affidavit that I'll mention, there's a complaint that Ms. Greco's testimony at trial was inconsistent with the statements in the affidavit. Again, like I said before, I don't believe that's an accurate characterization of the affidavit. If the affidavit were introduced into evidence, and if there were even a perfect impeachment of this witness with that affidavit, there's still two views of the evidence, and that shouldn't be reversed on a clear error standard. Here, that affidavit wasn't even introduced. There wasn't even an attempt to impeach Ms. Greco based upon that affidavit. Again, Your Honors, I would point you to the district court's conclusion where she said she did not read every line of every page of every document. She concluded there were over 150 pages of documents there. I think in that circumstances, you should not charge Ms. Greco with the knowledge of everything that is in these files. Otherwise, you'd have waiver in all kinds of circumstances, and that is inconsistent with Louisiana law. Unless there are any further questions from Your Honors, I will rest on my briefs. Your Honor, Ms. Greco's first statement on direct was, I don't remember what documents I reviewed at this audit. Her last question from her attorney was, did you look at this form on this page to get that number? She said yes. His next question was, but you don't remember looking at this at the audit. That's what the testimony was of Ms. Greco in terms of how she would have come up with a number other than with the form 940. Your Honor, I did raise the admissions issue in my post-trial brief in response to his brief. I did point out that they specifically pled three times, including after remand from this court, that Ms. Greco only reviewed the 940 form, the W-2 and the W-3. She did not testify inconsistent with her affidavit at trial. She said she didn't remember what she reviewed, Your Honor. The affidavit itself is in the record, and this is what it says, Your Honor. The March 18, 2012 audit was a year-end review, and a client reviewed form 940, W-2, and W-3s to verify the total amount of payroll for River Oaks. That's what she says she looked at. The very next sentence in the affidavit, she did not review the quarterly reports at the time of the audit, and if she had reviewed any quarterly reports or other documents to verify the total amount of the payroll, she would have marked the audit report of having verified the payroll amount from said documents. That's what they said three times in pleadings before this Court. Now they want to say there were 150-something documents and she couldn't be expected. Judge, they pled three times. We looked at them. I mean, have you ever been doing, like, form kind of work where you're going through and you're looking for a particular line on a particular form and every guy has the same form and line 7 is what you're looking for, do you necessarily look at line 3? If you're looking at line 7, line 7, line 7, 600 times a year, does that necessarily mean you go, oh, hey, they checked this box over here, I wonder what that means? I think that's what the judge found was that she was just kind of in a mode, she's looking for specific information, which is amounts of money and not where are these workers working. But she was looking for information on where they were working. She separately verified locations. One of them was not in Mississippi, right? The ones on the form, no. She had in the past asked questions about, are you working in Mississippi? She didn't ask at this time. It was overlooked. There's no doubt about it, Judge. But the fact of the matter is we gave her the forms that had the information on it. She picked information from line 2 and 3 of that form. Line 1 says we're a multistate employer. The attachment says we're working in Mississippi. What more can we do in terms of this? But what you're saying is a matter of law. What more you can do is what the contract requires, and that is that you give a written notice to the insurer that you are now in another state. And this is trying to absolve you of your client of failing to follow the contract. Your Honor, actually the first panel noted that there is no provision in the contract as to how we give notice to Bridgefield of anything. And the first panel in this case also noted that providing notice under the contract in terms of complying with contract requirements is different from whether, for waiver purposes, what we provided was sufficient to constitute a waiver. Your argument appears to be, because you really can't win any other way, that it's a matter of law if you provide forms that somewhere in those forms, and for an audit that wasn't about this, you provide forms, somewhere in those forms it shows that you're in some other state, then that is notice as a matter of law or knowledge as a matter of law. Well, sufficient, according to the first panel of this Court, to invoke a duty to investigate further to see if we're working in Mississippi. That's what the first panel of this Court said. Well, why didn't we remand for trial? I mean, we already knew what the form said. Your Honor, I'm kind of not — I can't figure it out either, other than that the Court was concerned about whether we collected — we paid premiums on Mississippi payroll. When the trial court ruled that we, as a matter of fact, and it was conceded by Bridgefield, paid premium based on Mississippi payroll after the audit and before the action, I thought we won. I thought it's over with. What else do we have? This Court had already said these are the documents you got. If she got these documents, did you pay premiums based on Mississippi payroll? The trial court said yes. Okay. Thank you, Your Honor. Thank you, Mr. President.